UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAMAR CONTRACTORS, LLC | CIVIL ACTION |
| VERSUS | NO. 20-588 |
| AR-CLAD, INC., GH HORNE ARCHITECTURAL SYSTEMS, LLC AND CENTRIA, INC. | SECTION M (3) |

## ORDER & REASONS

Before the Court are motions by defendants AR-Clad, Inc. ("AR-Clad") and GMHorne Commercial & Industrial, LLC ("GMHorne") to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, or alternatively, for summary judgment.[1] Plaintiff Lamar Contractors, LLC ("Lamar") responds in opposition,[2] and the defendants reply in further support of their respective motions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motions for summary judgment because Lamar's claims are perempted under Louisiana Revised Statute ("La. R.S.") 9:2772.[4]

---

[1] R. Docs. 61 & 66.
[2] R. Docs. 71 & 72.
[3] R. Docs. 76 & 84. Lamar also file surreplies in further opposition to the motions. R. Docs. 82 & 87.
[4] Also before the Court is a motion for summary judgment filed by defendant Centria, Inc. ("Centria"). R. Doc. 65. Lamar alleges that Centria manufactured the metal wall panel system at issue in this litigation and issued warranties covering defects in its product. R. Doc. 1-2 at 5. Lamar alleges that it made a warranty claim on Centria, but Centria has refused to fulfill its warranty obligations. *Id.* Centria argues that it is entitled to summary judgment because the warranty extends to the owner, St. Charles Parish (the "Parish"), not Lamar, the general contractor, with whom Centria has no contract. R. Doc. 65-1. Centria further argues that (1) even if Lamar could allege a breach-of-warranty claim, such a claim fails because Lamar alleges that the problems stem from installation, which is not covered by Centria's warranty; (2) there is no defect in the product; and (3) the material defect warranty expired four years before Lamar made its claim. *Id.* Centria's motion was set to be submitted to the Court on July 29, 2021. R. Doc. 65-12. Local Rule 7.5 requires that a memorandum in opposition to a motion be filed no later than eight days before the noticed submission date, which in this instance was July 21, 2021. Lamar, who is represented by counsel, has not filed an opposition. Accordingly, because Centria's motion for summary judgment is unopposed, and it appearing to

I.      **BACKGROUND**

This matter concerns a construction defect. In 2011, the Parish solicited bids for the construction of the Edward A. Dufresne Community Center (the "Community Center") to be constructed in accordance with plans prepared by Sizeler Thompson Brown Architects. The Parish selected Lamar as the general contractor for the project because it was the lowest responsible and responsive bidder.[5] Lamar signed the contract with the Parish on December 7, 2011.[6] As part of the project, Lamar entered into a written subcontract with AR-Clad to furnish labor and equipment to install a complete metal wall panel and composite wall panel system.[7] Lamar purchased the metal wall panel system from GMHorne pursuant to a written purchase order agreement.[8] Centria manufactured the wall panel system.[9] Lamar and the Parish both signed the certificate of substantial completion on August 6, 2013, and it was filed into the Parish's mortgage records on August 9, 2013.[10]

On January 22, 2020, Lamar filed this action alleging that the defendants AR-Clad, GMHorne, and Centria are liable for the cost it will incur to repair leaks in the wall panel system.[11] Lamar alleges that in May 2013, leaks were discovered near the panels around the windows in the Community Center's gymnasium.[12] Lamar's senior project manager, Steve Louque, emailed Jacob Scott with AR-Clad and Jason Horne with GMHorne to advise them of the situation.[13] Scott responded that the leaks were coming from windows that needed to be recaulked because AR-Clad

---

the Court that the motion has merit, it is GRANTED, and Lamar's claims against Centria are DISMISSED WITH PREJUDICE.
    [5] R. Doc. 1-2 at 3.
    [6] *Id.*
    [7] *Id.*
    [8] *Id.* at 4.
    [9] *Id.*
    [10] R. Doc. 61-3.
    [11] R. Doc. 1-2.
    [12] *Id.* at 4.
    [13] *Id.*

had removed the caulking done by the glass subcontractor to install flashing in the jamb and the metal wall panel system.[14] Scott stated that the recaulking was not within AR-Clad's scope of work.[15] Lamar had the glass subcontractor recaulk the windows, and the leak appeared to stop temporarily.[16] But Lamar alleges that the leaks persisted and were caused by AR-Clad's failure "to install proper through wall jamb flash, failure to install foam closures where required under the contract documents, and failure to properly install sill flash at certain locations and other components within the metal wall panel system."[17] Lamar claims that neither AR-Clad nor GMHorne complied with Lamar's requests "for them to fulfill their contractual and warranty obligations and make the necessary repairs to stop the leaks coming from the metal wall panel system."[18] Lamar alleges that defendants refuse to honor their contractual and warranty obligations to repair the metal wall panel system.[19] Lamar claims that it has received a bid estimating that it will cost $222,520.00 for labor, materials, and equipment to repair the leak.[20] Lamar seeks the amount of the estimate plus attorney's fees and costs.[21]

## II.   PENDING MOTION

AR-Clad and GMHorne argue that Lamar's claims against them are perempted by La. R.S. 9:2772, which provides that any action arising out of an engagement for construction must be brought no later than five years after the owner's acceptance of the work is registered in the mortgage office, whether brought by direct action or for contribution or indemnity or by third-party practice and whether brought by the owner or by any other person.[22] The Parish's acceptance

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 5.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] R. Docs. 61-2; 66-1.

of the work was filed in its mortgage records on August 9, 2013.[23] Thus, argue AR-Clad and GMHorne, any claims Lamar had against them relating to the construction of the Community Center were extinguished on August 9, 2018, and Lamar did not file this suit until January 22, 2020, more than seventeen months after its claims ceased to exist.[24] GMHorne also argues that any contractual claims against it are based on a breach of warranty in a contract of sale and are founded in redhibition, which has a one-year prescriptive period that expired in May 2014, one year from the date the water leak was discovered.[25]

In opposition to AR-Clad's motion, Lamar argues that AR-Clad performed remedial work on the Community Center in October 2019, and thus, Lamar's claims against AR-Clad should not be perempted.[26] Specifically, Lamar argues that AR-Clad's original work, prior to the Parish's acceptance of the work, should be considered as a single project together with the 2019 work so that none of Lamar's claims related to any portion of AR-Clad's work are perempted.[27] Lamar argues that this Court should defer ruling on AR-Clad's motion for summary judgment until after Lamar has taken Scott's deposition.[28]

With respect to GMHorne's motion, Lamar argues that its claim against GMHorne is not based upon breach of warranty or redhibition, but rather is for breach of the sales contract due to late delivery of the wall panel system materials, and thus has a ten-year prescriptive period.[29] Specifically, Lamar argues that GMHorne's failure to deliver the materials timely caused the window units to be installed prior to the metal wall panel, which is the opposite of what is supposed

---

[23] R. Doc. 61-3.
[24] R. Docs. 61-2 at 4-5; 66-1 at 5-10.
[25] R. Doc. 66-1 at 10-13.
[26] R. Doc. 71 at 8-10.
[27] *Id.*
[28] *Id.* at 9-10. Lamar points out that AR-Clad's and GMHorne's Rule 12(b)(6) motions were untimely filed because they were filed after the defendants had answered. R. Docs. 71 at 4 n. 10; 72 at 4 n. 7. Lamar acknowledges, however, that the Court can consider the motions under Rule 12(c) as motions for judgment on the pleadings. *Id.*
[29] R. Doc. 72 at 2-3.

to occur, and this resulted in AR-Clad's deficient installation of the wall panel system, having had to work around the previously installed window units.[30] Lamar further argues that La. R.S. 9:2772 is not applicable to sales contracts like the one it had with GMHorne.[31]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard[32]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a

---

[30] *Id*.
[31] *Id*. at 6-7.
[32] The Court will consider the motions under the summary judgment standard because the parties presented evidence outside of the pleadings. *See* R. Docs. 61, 66, 71, 72.

whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could

support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Peremption under La. R.S. 9:2772

Peremption is a period of time fixed by law for the existence of a right, and it may not be renounced, interrupted, or suspended. *L. Enf't Dist. of Jefferson Par. v. Mapp Constr., LLC*, 296 So. 3d 1260, 1263 (La. App. 2020) (citing La. Civ. Code arts. 3458, 3461). "Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." *Id.* (citing La. Civ. Code art. 3458). Because peremptive statutes are strictly construed against peremption and in favor of the claim, when there is more than one possible construction, "the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted." *Id.* (citing *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1083 (La. 2009)).

La. R.S. 9:2772 imposes a five-year peremptive period for actions arising out of a construction or design project. The statute provides in pertinent part:

> A. Except as otherwise provided in this Subsection, *no action*, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, *to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property* which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, *shall be brought against any person* performing or furnishing land surveying services, as such term is defined in R.S. 37:682, *including but not limited to* those services preparatory to construction, or *against any person performing or furnishing* the design, planning, supervision, inspection, or observation of construction or *the construction of immovables, or improvement to immovable property*, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:
>
> (1)(a) *More than five years after the date of registry in the mortgage office of acceptance of the work by owner.*
>
> . . . .

7

> B. (1) *The causes which are preempted within the time described above include any action:*
>
> > (a) *For any deficiency* in the performing or furnishing of land surveying services, as such term is defined in R.S. 37:682, including but not limited to those preparatory to construction or in the design, planning, inspection, or observation of construction, or *in the construction of any improvement to immovable property,* including but not limited to any services provided by a residential building contractor as defined in R.S. 37:2150.1(9).
> >
> > (b) For damage to property, movable or immovable, arising out of any such deficiency.
> >
> > . . . .
> >
> > (3) Except as otherwise provided in Subsection A of this Section, this peremptive period shall extend to every demand, whether brought by direct action or for contribution or indemnity or by third-party practice, and whether brought by the owner or by any other person.
> >
> > . . . .

La. R.S. 9:2772 (emphasis added).

The date of registry of acceptance, not the discovery of the defect, is the trigger for the statute's five-year peremptive period. *Koerner v. Vigilant Ins. Co.*, 2017 WL 4682295, at *4 (E.D. La. Oct. 18, 2017) (quoting *Burkart v. Williamson*, 29 So. 3d 635, 639 (La. App. 2009)). Moreover, the peremptive period is not interrupted by "any repairs or promises to repair alleged to have been made." *Id.* (quoting *Lasseigne v. Schouest & Sons, Builders*, 563 So. 2d 371, 373 (La. App. 1990)).

Here, it is clear that the five-year peremptive period has lapsed with respect to Lamar's claims against AR-Clad. All of Lamar's claims against AR-Clad arise from a construction contract, namely, AR-Clad's installation of the metal wall panel system. The Parish's acceptance of the work was filed into the mortgage records in August 2013, and Lamar filed this action more than five years later in January 2020. Thus, Lamar's claims are preempted on the face of the complaint.

Lamar's argument that AR-Clad performed work in 2019 and that such work should be construed as part of the same project as the 2013 work, so that neither is perempted, is off the mark. First, there is no evidence that AR-Clad performed any work after 2014. In his affidavit, Scott states that AR-Clad performed warranty work in 2014 and has not performed any work on the building since then.[33] This evidence is uncontroverted. Lamar attaches to its opposition an email from Scott to Chase Lacombe of Lamar discussing an inspection Scott performed on the Community Center in 2019 and repair work that AR-Clad might do.[34] There is no indication that AR-Clad performed the work discussed. Moreover, even if AR-Clad had performed work after the peremption period, it would not revive Lamar's perempted claims related to AR-Clad's original work. *See Koerner*, 2017 WL 4682295, at *5-6 (repair work performed after the peremptive period expired on the original work was considered a new job and claims related to that repair work were not perempted whereas claims related to the original work were). All the claims in Lamar's complaint against AR-Clad relate to AR-Clad's original work and work prior to 2014, and thus are perempted. Therefore, AR-Clad's motion for summary judgment is granted, and Lamar's claims against it are dismissed with prejudice.

The analysis differs with respect to Lamar's claims against GMHorne. Lamar argues that its claims against GMHorne are based on breach of a sales contract due to late delivery. "La. R.S. 9:2772 applies only to contracts to build, and not contracts of sale." *L. Enf't Dist.*, 296 So. 3d at 1266. To determine whether a contract is a construction contract or a contract of sale, "Louisiana courts generally weigh the economics of the situation to determine whether the primary obligation is 'to give' (sales contract) or 'to do' (construction contract)." *Harvey v. Mosaic Fertilizer, LLC*,

---

[33] R. Doc. 61-4 at 2.
[34] R. Doc. 71-2. The Court recognizes that AR-Clad contests the admissibility of the referenced email but will consider it anyway in evaluating the motion for summary judgment.

2009 WL 3112144, at *3 (E.D. La. Sept. 25, 2009) (quoting *Harris v. Black Clawson Co.*, 961 F.2d 547, 553 (5th Cir. 1992)). As stated in *Law Enforcement District of Jefferson Parish*,

> There are three major factors in determining whether a contract is a contract of sale or a contract to build or to work by the job. First, in a contract to build, the "purchaser" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object.

296 So. 3d at 1267-68 (quotation and citation omitted). "Thus, as a matter of law, the performance of a custom design and manufacturing can be sufficient to establish that a contract's primary obligation is 'to do' rather than 'to give.'" *ConstructionSouth, Inc. v. Fire Windows & Doors, Inc.*, 2013 WL 3242728, at *3 (E.D. La. June 25, 2013).

In the case at bar, Lamar's contract with GMHorne was a construction contract, having a primary obligation "to do," rather than simply a sales contract, having a primary obligation "to give." As evidenced by Lamar's own Rule 26 disclosures, the contract required GMHorne to create shop drawings to design metal wall components unique to the Community Center project.[35] These shop drawings were submitted to Lamar for review and approval of the architect, and then upon approval, sent to Centria to fabricate the metal wall components.[36] In other words, GM Horne was not simply supplying to Lamar products off the shelf. A significant portion of GMHorne's work included design skills and the products were not prefabricated but rather built according to GMHorne's design. Thus, Lamar's claims against GMHorne arise out of a construction contract that is subject to La. R.S. 9:2772, and its claims against GMHorne are perempted.

---

[35] R. Docs. 66-3; 66-4; 66-5.
[36] R. Doc. 66-5.

In this diversity case, the decision of the Louisiana appellate court in *Law Enforcement District of Jefferson Parish* is instructive. In that case, the Law Enforcement District of Jefferson Parish (the "District") entered into a contract with MAPP Construction, LLC ("MAPP") to build a new crime laboratory. 296 So. 3d at 1261. MAPP subcontracted with GMHorne to supply and install a wall panel system manufactured by Centria. *Id.* at 1261-62. GMHorne then contracted with Centria to furnish the materials. *Id.* at 1262. The litigation arose because the wall panel system leaked. *Id.* MAPP sued GMHorne, which in turn sued Centria. *Id.* Centria filed an exception arguing that GMHorne's claims against it arose from a construction contract and were thus perempted by La. R.S. 9:2772. GMHorne naturally argued that it had a sales contract with Centria that was subject to a ten-year liberative prescriptive period. *Id.* After examining the scope of work Centria undertook to construct wall panels specifically for the District's project, the appellate court affirmed the trial court's legal conclusion that GMHorne's contract with Centria was a construction contract, rather than a sales contract, because Centria had provided design services and did not simply sell an off-the-shelf product to GMHorne. *Id.* at 1263-70 (upholding exception of peremption under La. R.S. 9:2772). The same result follows for the case at bar where the contract at issue called for GMHorne to design components of the wall panel system specifically for the Community Center. Therefore, Lamar's claims against GMHorne are also perempted under La. R.S. 9:2772.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that AR-Clad's motion for summary judgment (R. Doc. 61) is GRANTED, and Lamar's claims against it are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that GMHorne's motion for summary judgment (R. Doc. 66) is GRANTED, and Lamar's claims against it are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Centria's motion for summary judgment (R. Doc. 65) is GRANTED, and Lamar's claims against it are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 10th day of August, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE